**Bernard FISHER, M.D., Plaintiff,**

v.

**NATIONAL INSTITUTES OF HEALTH, et al., Defendants.**

Civil Action No. 95–CV–455–RMU.

United States District Court, District of Columbia.

Aug. 13, 1996.

Stuart Henry Newberger, Robert Phillip Charrow, Alexandre De Gramont, Crowell & Moring, Washington, DC, for Plaintiff.

Madelyn Elise Johnson, U.S. Attorney's Office, Washington, DC, for Defendants.

### *MEMORANDUM ORDER*

URBINA, District Judge.

**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the court upon the plaintiff's motion for partial summary judgment and the defendants' cross-motion for summary judgment. Upon consideration of the submissions of the parties, and for the reasons articulated on the records and contained herein, the court concludes that the defendants are entitled to summary judgment as a matter of law. The defendants' motion for summary judgment shall be granted.

### I. Background Facts

Plaintiff Bernard Fisher, M.D. ("Dr. Fisher") is a Professor of Surgery at the University of Pittsburgh and served as the chairperson of the National Surgical Adjuvant Breast and Bowel Project ("NSABP") from 1967 to 1994. The NSABP is a private, independent, consortium of institutions that conducts research on the treatment and prevention of breast and bowel cancer. The NSABP is able to conduct large scale clinical trials of treatment and prevention techniques. Starting in the 1970s, NSABP undertook a series of major studies to compare the effectiveness of different forms of surgery for breast cancer.

In the summer of 1990, NSABP personnel discovered anomalies in the data submitted by one of the institutions participating in the study, St. Luc Hospital in Montreal, Canada ("St. Luc"). To determine the extent of the anomalies and to ascertain whether these anomalies were due to falsification, the NSABP conducted an audit of St. Luc records. The audit revealed that in several instances patient eligibility had been altered so that patients who did not meet the eligibility criteria could participate in the study. In February 1991, shortly after the audit was completed, Dr. Roger Poisson ("Dr. Poisson"), the physician at St. Luc responsible for the hospital's participation in the NSABP breast cancer trials, informed Dr. Fisher that he had altered the patient records.

Subsequent to the St. Luc audit, Dr. Poisson was placed under investigation for scientific misconduct. In April 1993, the Office of Research Integrity ("ORI")[1] issued its final

1. The ORI was formerly known as the Office of Scientific Integrity. The ORI is an independent

report in which it concluded that Dr. Poisson had engaged in scientific misconduct. The ORI made no findings against Dr. Fisher or the NSABP in its report.

In January 1994, members of the staff of Representative John Dingell, then Chairman of the Oversight and Investigations Subcommittee of the House Energy and Commerce Committee, contacted officials from the National Cancer Institute ("NCI") and ORI about Dr. Poisson and the discrepant St. Luc data. The Subcommittee held hearings on the scientific misconduct committed at St. Luc in April and June of 1994. In the spring of 1994, ORI began a scientific misconduct investigation of Dr. Fisher for including the discrepant St. Luc data in published papers.

MEDLINE, CANCERLIT and PDQ (collectively the "databases") are computer databases containing information about articles that have been published in biomedical scientific journals.[2] The databases are research tools that can be used to locate published articles. Each file in the database provides bibliographic information about the article including the title of the article, the title of the publication, the name or names of the author or co-authors and a summary or abstract of the article. Beginning in June 1994, annotations such as "[scientific misconduct—data to be reanalyzed]"[3] (the "annotations") were added to the title field in the files of articles which incorporated the St. Luc data.[4]

After discussions with the defendants did not result in the removal of the annotations from the databases, Dr. Fisher filed the instant action on March 6, 1995 against the National Institute of Health, National Library of Medicine, National Cancer Institute, Office of Research Integrity, Department of Health and Human Service and various officials in their official capacities.[5] On March 16, 1995, this court entered a stipulated preliminary injunction which contained the agreement previously reached between the parties providing for the removal of the annotations and the addition of a new annotation—"[prior annotation incorrect]."

## II. Analysis

 Before the court are plaintiff's motion for partial summary judgment and the defendants' cross-motion for summary judgment. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To meet its burden, the moving party must demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

---

entity within the Department of Health and Human Services which investigates scientific misconduct in research involving Public Health Service funding.

**2.** The databases are operated and maintained by the National Institute of Health ("NIH"). NIH operates MEDLINE through the National Library of Medicine ("NLM") and operates CANCERLIT and PDQ through NCI.

**3.** Other annotations included: [scientific misconduct—reanalysis of NSABP protocol B–06 is available via PDQ, CANCERNET and CANCERFAX]; [scientific misconduct—reanalysis of NSABP protocols B–13 and B–14 available via PDQ, CANCERNET, and CANCERFAX] and [sci-

entific misconduct—reanalysis of NSABP protocols B–06, B–13, and B–14 are available via PDQ, CANCERLIT, or CANCERFAX].

**4.** The annotations were added to the MEDLINE and PDQ databases in June 1994 and were added to the CANCERLIT database in July 1994.

**5.** Dr. Harold Varmus, Director of the National Library of Medicine; Dr. Donald A.B. Lindberg, Director of the National Library of Medicine; Dr. Samuel Broder, Director of the National Cancer Institute; Dr. Lyle Bivens, Director of the Office of Research Integrity; and Donna Shalala, Secretary of the Department of Health and Human Services.

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The court construes all evidence in favor of the non-movant, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. The court concludes that there are no material facts in dispute and that this dispute is ripe for summary judgment.

Plaintiff contends that the defendants violated the Privacy Act when it added the annotations to the database files. Plaintiff's position is that the defendants were disclosing inaccurate records about him once the annotations were added to the database files. The defendants argue that the database files are not covered by the Privacy Act because: (1) they are exempt from coverage because they are library reference materials, and (2) they do not qualify as "records" as the term is defined under the Act. Plaintiff also alleges that the defendants improperly disclosed information from files the ORI maintained about him in connection with his scientific misconduct investigation. The defendants argue that there has been no violation of the Privacy Act because: (1) the ORI files, as they were maintained at the time of the alleged disclosure, were not maintained in a "system of records," and (2) the plaintiff cannot demonstrate the necessary nexus between the disclosures and the ORI files to demonstrate a violation of the Privacy Act.

The court is unpersuaded by the defendants' argument that the database files are exempt from the Privacy Act because they are "library reference materials." The court determines, however, that the database files are not "records" for purposes of the Privacy Act. Further, the court concludes that at the time of the alleged disclosures, the ORI files were not maintained in a system of records, and thus were not subject to the Privacy Act. Moreover, even if the ORI files were covered by the Privacy Act, the plaintiff has failed to present evidence to demonstrate the necessary connection between the disclosures and the files.

To establish a violation of the Privacy Act, a plaintiff must establish that the information in question is covered by the Act as a "record" contained within a "system of records." 5 U.S.C. § 552a(b) (1996). Once a plaintiff establishes that the information is covered under the Privacy Act, he must then demonstrate that the agency improperly disclosed the information. A plaintiff who is able to establish these first two requirements is entitled to declaratory and injunctive relief. 5 U.S.C. § 552a(g)(2)(A) (1996). If a plaintiff wishes to additionally recover monetary damages, he must demonstrate that the disclosure had an "adverse effect" on him and that the agency acted in an "intentional or willful" manner. 5 U.S.C. §§ 552a(g)(1)(D), (g)(4) (1996).

█ Under the Privacy Act, a record is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name . . . ." 5 U.S.C. § 552a(a)(4). The D.C. Circuit examined the Privacy Act's definition of a "record" in *Tobey v. N.L.R.B.,* 40 F.3d 469 (1994), and concluded that to qualify as a record the information must (1) contain the individual's name or other identifying particular and (2) be "about" the individual. *Tobey,* 40 F.3d at 471. The court was clear to establish that "the fact that information contains an individual's name does not mean that the information is 'about' the individual." *Id.* (rejecting the Third Circuit's interpretation of "record" as too broad). The court also noted that "[s]o long as the information is 'about' an individual, nothing in the Act requires that it additionally be about a 'quality or characteristic' of the individual." *Id.* at 472 (rejecting the Ninth and Eleventh Circuit's interpretations of "record" as too narrow).

█ The D.C. Circuit has also provided district courts with factors to consider when determining if a "system of records" exists. Initially, the Court of Appeals recognized that there is a distinction between a group of records and a system of records. The court held that "in determining whether an agency maintains a system of records keyed to individuals, the court should view the entirety of

the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies." *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1461 (D.C.Cir. 1996).

### 1. The Database Files

#### A. The Database Files Are Not Exempt From The Privacy Act As Library Reference Materials

■ The defendants contend that the database files are library reference materials, and, as such, are exempt from the Privacy Act. The defendants cite two cases in which courts have held that library reference materials were not "agency records" for Freedom of Information Act ("FOIA") purposes. In *SDC Development Corp. v. Mathews*, 542 F.2d 1116 (1976), the Ninth Circuit determined that the Medlar database, which is available for research through MEDLINE, was not an agency record under FOIA. The court noted that "[t]here is, then, a qualitative difference between the types of records Congress sought to make available to the public by passing the Freedom of Information Act and the library reference system sought to be obtained here." *Id.* at 1120. In *Baizer v. United States Dep't of the Air Force*, 887 F.Supp. 225 (N.D.Cal.1995), the District Court relied on *SDC Development Corp.* in concluding that an Air Force research database consisting of Supreme Court decisions was not a "record" under FOIA.

*SDC Development Corp.* and *Baizer* are distinguishable, however, because the term "record" has a different meaning under FOIA than it does under the Privacy Act. While there is no statutory definition of "record" under FOIA, the Supreme Court has set forth two requirements: (1) "an agency must 'either create or obtain' the requested materials" and (2) "the agency must be in control of the requested material at the time the FOIA request is made." *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 2848, 106 L.Ed.2d 112 (1989). The FOIA definition of "record" is broader than the statutory definition of the term under the Privacy Act in that the FOIA definition does not require the

information to contain an identifying particular or to be "about" the individual. Accordingly, case law interpreting the definition of a "record" under FOIA provides little guidance when interpreting the term under the Privacy Act.

■ Additionally, as the Court of Appeals has recently observed, unlike FOIA, the primary goal of the Privacy Act "is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C.Cir.1996). Accordingly, the fact that other courts have held that library reference materials are exempt from the disclosure requirements of FOIA because it "does not directly reflect the structure, operation, or decision making functions of the agency" does not demonstrate that the same courts would have concluded that individuals do not have the right pursuant to the Privacy Act to review library reference materials maintained by an agency about them and to request corrections of any inaccuracies.

#### B. The Database Files Do Not Qualify As Records Under The Privacy Act

There is no dispute that the database files contain Dr. Fisher's name. The issue *sub judice* is whether the database files are "about" Dr. Fisher. Plaintiff advances two arguments in support of his position: (1) "nothing tells more 'about' a research scientist like Dr. Fisher than his scientific publications, speeches and the like," *Plaintiff's Motion for Partial Summary Judgment* at 21, and (2) the database files are "about" him because they contain both his name and address.

The D.C. Circuit most recently examined the Privacy Act's definition of "record" in *Tobey v. N.L.R.B.*, 40 F.3d 469 (1994). In *Tobey*, the plaintiff brought an action against his employer, the National Labor Relations Board ("NLRB"), for allegedly violating the Privacy Act. The NLRB maintains a computer data system capable of tracking unfair labor practice cases being processed by the NLRB. The computer system is called the

Case Handling Information Processing System ("CHIPS"). Among the information included in CHIPS is the identifier of the NLRB employee assigned to the case and dates of significant events in the case, such as when the case was filed and when it was resolved. The timeliness or efficiency with which an employee processes cases, including an employee's ability to meet time goals, is one of four critical elements the NLRB uses to evaluate job performance. In connection with a grievance arbitration involving, among other things, plaintiff's deletion from a promotion roster, an NLRB official used CHIPS to retrieve all cases assigned to the plaintiff and used the information to review the plaintiff's efficiency in processing cases. The court found that CHIPS was not a "system of records" because "its files contain no records, that is, no information 'about' individuals." *Tobey*, 40 F.3d at 471. The court concluded that the files were "about" NLRB cases and not about the employees assigned to the case. "The number and initials of the examiner assigned are part of the overall case information." *Id.* The court rejected the notion that the files were transformed into records because the NLRB could use the data from CHIPS in combination with other information to draw inferences about job performance.

 The court finds the files at issue here to be similar to those examined in *Tobey*. The court concludes that the database files are "about" the articles and not Dr. Fisher or the other authors listed. The names of the authors and the annotations are part of the overall information on the articles. The fact that a reader of the abstracts could glean some insight into the type of work Dr. Fisher does by the type of articles he authors or co-authors is not sufficient to

make the database files records under the Privacy Act. Additionally, the fact that a user of the database files could infer that the annotations placed on the database files were meant to indicate that Dr. Fisher had been found guilty of scientific misconduct is not sufficient to transform the database files into Dr. Fisher's records.

In making its determination, the court considered the Court of Appeals' conclusion that the Privacy Act does not require the information to be about a quality or characteristic of an individual to qualify as a record. *Tobey*, 40 F.3d at 472. This court also considered the totality of the circumstances surrounding the database files, including the function of defendants, as the creator of the files, and the purpose for which the database files were created. *Cf. Henke v. Dep't of Commerce*, 83 F.3d 1453 (D.C.Cir.1996). Having reviewed information contained in the database files, and taking into consideration their practical, operational and functional aspects, the court concludes that the information contained in the files was fashioned to, and does, provide the reader with information "about" the article described in each file and does not provide information "about" Dr. Fisher.

 It is clear to this court that the database files and retrieval systems such as MEDLINE and CANCERLIT were created to assist physicians and other medical researchers conduct medical research. Each database file is similar to a card in a card catalogue, providing a reader with information on an article, such as the title, the authors, and a short description of the article's subject.[6] The court is unpersuaded by the evidence presented that the purpose of the database files is to provide researchers with information about various physicians or researchers.[7] Moreover, the court finds that

6. Information contained in the MEDLINE database files includes the title of the article, the names of the authors, the name of the organization connected with the article, the citation for the article, the language in which the article is written and an abstract of the subject of the article. Information contained in the CANCERLIT database files includes the title of the article, the names of the authors, the source for the article and the year the article was published. The court was not provided with samples of the PDQ database files. Counsel agreed during oral

arguments, however, that they were similar to the MEDLINE and CANCERLIT database files.

7. If the purpose of the database files was to provide information about physicians, or the authors of the medical publications, the court would expect the files to contain the type of information found in the Martindale–Hubbell Law Directory about attorneys, such as date of birth, education history, employment history, and areas of practice.

the files yield little information on Dr. Fisher except that he authored the article, which in turn provides the reader with some indication of his field of specialty. This circuit has held that the fact that a file or document contains an individual's name is not sufficient to qualify the information as a record. *Tobey,* 40 F.3d at 471. Implicit in that determination is that the information must provide information concerning or describing the named individual for the information to be considered a record. As the holding in *Tobey* demonstrates, the fact that the information in the database files could be used to draw inferences or conclusions about Dr. Fisher which are not provided directly in the database files does not transform the database files into records. Additionally, the fact that readers might have inferred that the annotations were placed on the articles because Dr. Fisher had been found guilty of scientific misconduct, does not persuade the court that the addition of the annotations to the database files transformed them into records. As this circuit observed, the Privacy Act covers "only information that actually describes the individual in some way," *Tobey,* 40 F.3d at 472. The fact that it is possible for a reasonable person to interpret information as describing an individual does not mean the information is about that individual for purposes of the Privacy Act.[8]

▮ In the alternative, plaintiff argues that the database files qualify as records because they contain Dr. Fisher's name and address.[9] In support he cites *United States Dep't of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 114 S.Ct. 1006, 127

L.Ed.2d 325 (1994) and *Reuber v. United States,* 829 F.2d 133 (D.C.Cir.1987). The court is unpersuaded that either case supports the proposition that information is "about" an individual solely because it contains the individual's address.

In *United States Dep't of Defense v. Federal Labor Relations Authority,* the Supreme Court considered whether the Federal Labor Relations Authority ("F.L.R.A.") had correctly directed federal agencies to provide unions with the home addresses of agency employees represented by the unions. The Court held that the Privacy Act forbade the disclosure of the home addresses to the union representatives. As a prerequisite to its discussion of the FOIA issue, the Court concluded, without further discussion or elaboration, that "[t]he employee addresses sought by the unions are 'records' covered by the broad terms of the Privacy Act." *United States Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. at 494, 114 S.Ct. at 1012. Relying on this determination, the plaintiff argues that "[a]s the Supreme Court recently held, the fact that these records contain both Dr. Fisher's name and address is enough to make them 'about an individual' and thus a record...." *Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgment,* at 7. The Court did not articulate what factors it considered when determining that the files at issue in *F.L.R.A.* were records. As the Supreme Court did directly address the issue, the court is reluctant to interpret the *F.L.R.A.* decision as holding that any information that contains an individual's name and business

---

8. The court notes that the annotations appeared in the title field of the database file and did not appear next to Dr. Fisher's name. Nor was there any attempt to connect the annotations to Dr. Fisher's name on articles that have multiple co-authors.

9. The plaintiff contends that the addresses contained in the database files are the professional addresses of the authors or the addresses of their affiliations. In support, the plaintiff relies on a July 1, 1994 letter from the NCI to the NLM which describes the fields contained in the CANCERLIT database files. *Pl.'s Mot.Summ.J.,* exhibit Tab 102. However, none of the CANCERLIT files contain addresses. Plaintiff supplies no support for the conclusion that the organization

field in MEDLINE is the author's professional address.

Even assuming the MEDLINE records provided the author's professional address, of the sixty-one (61) MEDLINE database files provided by the plaintiff only twenty-eight (28) contained an address. Additionally, the court notes the MEDLINE database files contain several different addresses. Usually the address given is one that could easily be the plaintiff's professional address, such as the University of Pittsburgh or NSABP Headquarters. In other cases, however, the address is less identifiable with the Dr. Fisher, such as the Medical Breast Cancer Section of the National Cancer Institute in Bethesda, MD or the Imperial Cancer Research Fund in London, England.

address qualifies as a record under the Privacy Act.

In *Reuber v. United States,* the plaintiff, an employee of the Department of Health and Human Sciences ("HHS"), accused HHS of violating the Privacy Act by maintaining a record that described how he had exercised his First Amendment rights. The record in question was a letter of reprimand written to the plaintiff in which the writer described the plaintiff's First Amendment activities. The court determined that "since the letter clearly identifies [plaintiff] by name and address, it unmistakenly constitutes a record for Privacy Act purposes." *Reuber,* 829 F.2d at 142.

*Reuber* is a pre-*Tobey* decision, and it is unclear if the *Reuber* court found the letter in question to be "about" the plaintiff in addition to being linked by an identifying particular as required under *Tobey.* One could infer, as the plaintiff has, that the court found the letter to be a record to be "about" the plaintiff merely because it contained his address. One could also infer, however, just as the Third Circuit did in *Quinn v. Stone,* 978 F.2d 126 (3d Cir.1992), that the court did not consider it necessary to determine if the record was "about" the individual as long as "that piece of information were linked with an identifying particular (or was itself an identifying particular) and maintained within a system of records." *Quinn v. Stone,* 978 F.2d 126 at 133. The court is not persuaded that the Court of Appeals in *Reuber* determined that information is "about" an individual for purposes of the Privacy Act whenever the information contains the individual's name and address.

Given the abundance of information in the database files related to articles, and the lack of information concerning Dr. Fisher, and considering the purpose behind the database files, the court concludes that the database files do not qualify as Dr. Fisher's records under the Privacy Act. Accordingly, the defendants are entitled to summary judgment regarding the database files.

## 2. The Office Of Research Integrity ("ORI") Files

Plaintiff contends that statements made by Dr. Phillip R. Lee and Dr. Samuel Broder constitute non-consensual disclosures of information from the ORI's system of records. The defendants argue that there have been no Privacy Act violations because: (1) the ORI investigatory files were not "a system of records" at the time of the disclosures, and (2) the plaintiff cannot demonstrate the requisite nexus between the information disclosed and the ORI files. The court resolves both issues in favor of the defendants.

### A. The ORI Files Are Not A "System of Records"

■ The Privacy Act defines the term "system of records" as "a group of any records under the control of any agency from which information is retrieved by name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). The D.C. Circuit has held that to qualify as a "system of records," the records must be actually retrieved by the name or identifier of an individual; retrieval capability is not sufficient. *Henke v. Dep't of Commerce,* 83 F.3d 1453, 1460 (D.C.Cir. 1996). The agency's retrieval practice is only one factor, however, as courts are directed to also consider "the agency's function and the purpose for which the information was gathered" when determining if a group of records qualifies as a system of records. *Henke v. Dep't of Commerce,* 83 F.3d 1453, 1461 (D.C.Cir.1996).

■ The issue before the court is whether the ORI scientific misconduct investigatory files constituted a system of records at the time of the alleged disclosures. The defendants contend that the ORI files were not a "system of records" at the time of the alleged public disclosures by Dr. Phillip Lee and Dr. Samuel Broder because the files were not retrieved by the names or identifiers of individuals.[10] The plaintiff argues that Dr. Fisher's ORI investigatory file was identified and retrieved by his name. In his supplemental

---

**10.** The defendant contends that the ORI did not treat its files as a "system of records" until after it published a Privacy Act system notice for those files in July 1994.

memorandum, filed after the *Henke* decision, he states "Dr. Dorothy Macfarlane, ORI's 30(b)(6) designee, testified that, at the time of the disclosures from Dr. Fisher's investigatory files, 'there was a Privacy Act systems notice being drafted reflecting the fact that we did, in some cases [including Dr. Fisher's], identify cases by the respondent's name.' Macfarlane Dep. at 241." *Pl.'s Supplemental Mem. in Supp. of Pl.'s Mot. for Partial Summ.J.* at 2 (parenthetical included in the original).

The ORI files are compiled for investigatory purposes. Therefore, "Privacy Act concerns are at their zenith, and if there is evidence of even a few retrievals of information keyed to individuals' names, it may be the case that the agency is maintaining a system of records." *Henke* 83 F.3d at 1461. Having reviewed the portion of Dr. Macfarlane's deposition identified by the plaintiff, the court finds that there is no evidence in the record that the files concerning the scientific misconduct investigation of Dr. Fisher were retrieved by his name at the time of the alleged disclosures.[11] Indeed, it appears that the primary practice and policy of the agency in April and June of 1994 was to index and retrieve the investigatory files by the name of the institution in which the alleged misconduct occurred, rather than by the name of the individual scientist accused of committing the misconduct. The fact that it was possible to use the plaintiff's name to identify a file containing information about the plaintiff is irrelevant. *Henke* clearly establishes that retrieval capability of records by name is not sufficient to transform a group of records into a system of records; to be a system of records, the group of records must actually be accessed by the agency by use of a personal identifier. As the plaintiff has failed to demonstrated that the ORI files constituted a system of records at the time of the disclosures, the defendants are, accordingly, entitled to summary judgment regarding the alleged disclosures from the ORI files.

**B. The Plaintiff Has Not Demonstrated The Necessary Nexus Between The Disclosures And The ORI Records**

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of the individual to whom the record pertains...." 5 U.S.C. § 552a(b) (the Act also contains twelve exceptions to this requirement, none of which appears to be applicable to this case). As a general rule, courts have held that the Privacy Act only covers disclosures of information which was either directly or indirectly retrieved from a system of records. *See Krowitz v. Dep't of Agriculture,* 641 F.Supp. 1536, 1545 (W.D.Mich. 1986), *aff'd* 826 F.2d 1063 (6th Cir.1987); *Doyle v. Behan,* 670 F.2d 535, 539 (5th Cir. 1982); *Thomas v. United States Dept. of Energy,* 719 F.2d 342, 345 (10th Cir.1983). As the Tenth Circuit held, "[t]he disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records." *Thomas,* 719 F.2d at 345. This general rule is commonly known as the "retrieval rule."

---

**11.** The following is excerpted from page 241 of Ms. Macfarlane's deposition transcript:

THE WITNESS:
It was my understanding that in the early days of OSI and ORI, we maintained records by institution rather than by individual. And I was aware that there was a Privacy Act systems notice being drafted reflecting the fact that we did, in some cases, identify cases by the respondent's name.
BY MR. de GRAMONT:
Q. In the case of Dr. Poisson, were his records identified by name?
A. The records in the case file are identified with the case number, 91–08, and the tag St. Luc Hospital.
Q. Are they retrievable by name?
A. They are retrievable from our case list by his name, yes.
Q. Is the same answer true for Dr. Fisher?
A. I don't know what the case file reads on that case, but it's certainly the case list, lists him as respondent.
Ms. Macfarlane never testified that Dr. Fisher's file was retrieved by his name. Moreover, she testified that she did not even know if a file identified by Dr. Fisher's name even existed during the relevant time period.

The D.C. Circuit, however, created an exception to the retrieval rule in *Bartel v. FAA,* 725 F.2d 1403, 1408 (D.C.Cir.1984). In *Bartel,* the Court of Appeals found that the Privacy Act was applicable to a situation in which an agency official disclosed his personal recollection of an investigation that he had instituted, despite that fact that he may not have actually reviewed the investigatory record before making the disclosure. The court held, "it would hardly seem an 'intolerable burden' to restrict an agency official's discretion to disclose information in a record that he may not have read but that he had a primary role in creating and using, where it was because of that record-related role that he acquired the information in the first place." *Id.* at 1411. It is important to note two things about the *Bartel* decision. First, the Court of Appeals repeatedly, on six occasions, stated that its ruling was based on the particular facts of that case. Second, the Court of Appeals did not reject the retrieval rule for use in other scenarios. As the court of appeals recently explained,

> On the facts then before us, however, that standard would have allowed an official to "circumvent [the Act] with respect to a record he himself initiated by simply not reviewing [the record] before reporting its contents or conclusions." We therefore found the retrieval rule inapposite in order to avoid an "interpretation [that] would deprive the Act of all meaningful protection of privacy."

*Pilon v. Dep't. of Justice,* 73 F.3d 1111, 1117 (1996) (quoting from *Bartel.* Internal citations omitted).

The plaintiff has offered no evidence to support the conclusion that either Dr. Lee or Dr. Broder became aware of the scientific misconduct investigation of Dr. Fisher, either directly or indirectly, because of the information contained in the ORI investigatory file. Plaintiff argues "[o]bviously, ORI illegally disclosed the information from their confidential files to Broder and Lee, who then illegally broadcast it to the public at large." *Pl.'s Reply in Supp. of Pl.'s Mot. for Partial Summ.J.* at 16. Plaintiff, however, has identified no evidence to support this conclusion.

As there is no evidence that the doctors' statements were based on information retrieved from the ORI investigatory files, the court must consider if the facts of this case place it within the parameters of the *Bartel* decision. In other words, did either doctor institute the investigation or was either involved with the investigation. During oral arguments, plaintiff stated that Dr. Lee was Dr. Border's superior and that it was Dr. Broder who "told ORI to open the scientific misconduct investigation." Tr. at 12. In response, the defendants stated that Dr. Border did not supervise the ORI and "did not have the authority to compel initiation of a scientific misconduct investigation or inquiry." Tr. at 62. Defendants also noted that there is no evidence that suggests that Dr. Lee exercised supervisory authority over ORI. The plaintiff has failed to identify evidence that would support its position.

The court concludes that plaintiff has failed to demonstrate that either Dr. Lee or Dr. Broder learned of the scientific misconduct investigation from the ORI investigatory file or through direct involvement in the investigation. Accordingly, the defendants are entitled to summary judgment regarding the alleged disclosures from the ORI files.

### 3. Administrative Procedure Act Claim

As plaintiff's counsel stated during oral arguments, the Administrative Procedures Act ("APA") claim is not a substantive cause of action, and it would have been relevant only if the plaintiff had prevailed on his motion for summary judgment. Accordingly, the APA claim is dismissed as moot.

**ORDERED** that plaintiff's motion for partial summary judgment be and is hereby **denied;** and it is

**FURTHER ORDERED** that plaintiff's Administrative Procedures Act be and is hereby **dismissed as moot;** and it is

**ORDERED** the defendants' motion for summary judgment be and is hereby **granted,** and judgment is entered in favor of the defendants; and it is

**FURTHER ORDERED** that pursuant to Fed.R.Civ.P. 62(c) and the agreement of the parties, the court's Order and Preliminary

Injunction dated March 16, 1995 shall remain in effect during the pendency of any appeal from this Order to the United States Court of Appeals for the District of Columbia Circuit or until the time for notice of such an appeal has expired.

**SO ORDERED.**