Filed 1/27/23  Doe v. Biter CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DOE et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>M. BITER et al.,<br><br>    Defendants and Respondents. | F080567<br><br>(Super. Ct. No. 18C-0243)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Robert S. Burns and Frank Dougherty, Judges.*

Jess P. West II and Gilbert A. Cabrera, in pro. per., for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Monica N. Anderson, Assistant Attorney General, Neah Huynh and Oliver C. Wu, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

---

\*        Judge Reinhart sustained respondents' demurrer; Judge Burns denied appellants' ex parte request for an extension of time to file an amended complaint and their request for reconsideration; Judge Dougherty, a retired Judge of the Merced Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution, granted respondents' ex parte application to dismiss the action with prejudice.

Appellants, current inmates identified in their complaint as "John Does #1 & #2," appeal after their civil complaint was dismissed with prejudice. The trial court entered an order dismissing the action following an ex parte motion to dismiss after appellants failed to timely file an amended complaint. Respondents in this case are M. Biter, the former warden of Corcoran State Prison (the prison), and Scott Kernan, the former Secretary of the Department of Corrections and Rehabilitation. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case developed out of appellants' frustrations when they received correspondence from prison officials concerning housing issues through interdepartmental envelopes that are not sealed during delivery. In response to administrative complaints, the prison agreed to process all future mail marked confidential as confidential mail. However, as appellants felt this was insufficient to satisfy their concerns, they filed suit on August 13, 2018, alleging that sending such information in regular envelopes violated the Information Practices Act of 1977 (IPA) (Civ. Code, § 1798 et seq.), Penal Code section 679, and the "special relationship" between inmates and the Department of Corrections and Rehabilitation.

In December 2018, respondents filed a demurrer. Respondents alleged the complaint was uncertain, appellants had failed to exhaust their administrative remedies, appellants failed to state a cause of action under the IPA, and respondents were immune under Civil Code section 47. After full briefing and a February 2019[1] hearing, the trial court sustained the demurrer. The court agreed with all grounds raised by respondents and granted appellants 15 days from the date an order on the ruling was served to file an amended complaint. Respondents were ordered to draft the relevant order.

---

[1] Subsequent references to dates are to dates in the year 2019 unless otherwise stated.

Respondents initially submitted a proposed order on March 18, which the trial court rejected based on appellants' objection that it did not specifically identify the grounds for granting the motion that were announced at the hearing. After amending the draft, the final order was signed on April 4. Notice of entry of judgment was then served by mail on May 14. According to a later court order, this made the due date for filing the amended complaint June 3.

While the process of finalizing and serving the order was ongoing, appellants filed an ex parte request for an extension of time to file and serve their amended complaint. The request was signed May 8, and appears, based on a date stamp, to have been received on May 13. Appellants alleged they had not received timely notice of the entry of order, were waiting to obtain copies of documents needed to amend the complaint, and were having their mail access restricted. Despite this, appellants stated they could file their amended complaint by June 13.

The trial court believed this filing was not proper based on a faulty proof of service.[2] Despite this flaw, on May 29, the court rejected the request on the merits, claiming it would "make an exception to [the service] irregularity on this one occasion." The court rejected the request on the ground that appellants "were aware of the ruling of the court on February 25, 2019, and should have been preparing the First Amended Complaint since that date." With respect to the allegedly missing documents appellants claimed to need, the court noted both that full copies "were allegedly obtained April 26," and that normal correspondence with appellants can allegedly be "accomplished within 7 to 10 days," leaving sufficient time to meet the relevant deadlines. The court stated the

---

**2** Respondents state that the court clerk rejected this filing based on this flaw. While it appears this is the case, citations to the record provided by respondents do not prove this point, as they relate to a rejection that occurred on April 30. The case summary from this time does show the submission of a declaration regarding service of unknown documents from one of the appellants on May 13. The actual ex parte application does not appear in the case summary or in the record as a filed document, but rather is attached as part of omissions from the clerk's transcript.

amended complaint was due by June 3, and denied the request for an extension. This order was purportedly served by mail on May 30.

An amended complaint was not filed on the June 3 deadline. On June 10, respondents filed an ex parte application for an order to dismiss the action with prejudice. In the attached declaration, counsel for respondents stated he had telephonically informed appellants of the motion. Appellants did not appear at the June 13 hearing, and the court granted the ex parte application.

Between the point appellants were informed of the pending motion to dismiss and the hearing, appellants mailed their amended complaint to the court. The document was received by June 20, but rejected by the court clerk. Appellants responded by filing an application requesting the trial court reconsider its denial of appellants' prior request for an extension of time. In that application, appellants stated they did not receive notice of the order denying their request for additional time until June 10, and immediately mailed their amended complaint the next day. Appellants further stated that upon receiving the order, they realized they had miscalculated the time by which their amended complaint was due under Code of Civil Procedure section 12, erroneously excluding weekends and holidays from their calculation.

The court held a hearing in October, at which appellants again failed to appear.[3] At that hearing, the court denied appellants' request for reconsideration stating there were "no new facts or law" presented in the motion. On December 2, the court entered a formal order denying the motion and a judgment of dismissal with prejudice.

This appeal timely followed.

---

[3] Appellants claim they were denied access to multiple telephonic hearings due to miscommunications and failures to provide access. However, appellants appear not to have raised these as grounds for relief in the trial court and have not directly appealed on the ground of lack of access. Accordingly, we take no position on the effect of such in civil cases raised by prisoners.

4.

## DISCUSSION

Appellants' opening brief in this case spans more than 140 pages and recounts virtually all of the events of the case leading to the appeal. Interspersed throughout that recitation are several claims of error that are not expounded upon or that merely repeat and recite purported briefing from the below proceedings and are then followed by additional facts in the timeline of the case. This blunderbuss approach to briefing makes it particularly difficult to identify and resolve the actual issues appealed, with the most direct guidance from appellants being a claim that their arguments "support reversal of orders of dismissal." (Capitalization omitted.)

Through the responsive and reply briefs, the parties have reasonably framed the actual issues raised as falling within two categories. First, the parties focus on the court's actions in dismissing the matter after appellants failed to timely amend their complaint. These disputes concern the court's decision to deny appellants' request for an extension of time, the ex parte nature of the motion to dismiss, and the timing of how these two events occurred viewed in the context of appellants' motion to reconsider the dismissal. Second, the parties dispute whether sustaining respondents' demurrer was proper. These disputes center on whether the complaint was uncertain, appellants properly stated facts supporting their claims, appellants exhausted their administrative remedies, and respondents were entitled to immunity. This court considers the arguments in the context of these two general categories.

### Dismissal of the Action Was Proper

Dismissal of appellants' claims arose out of three challenged actions following the point appellants were granted leave to amend their complaint. First, appellants submitted, and the trial court denied, a request to extend the deadline for filing and serving their amended complaint. Second, the trial court exercised its authority under Code of Civil Procedure section 581 to dismiss the action based on an ex parte motion

5.

filed by respondents. Third, the trial court denied appellants' request to reconsider the dismissal order.

The three challenged actions taken by the trial court all involve application of the court's discretionary authority. A court has discretionary authority to extend the time for filing an amended complaint. (See *Vestal v. Young* (1905) 147 Cal. 715, 720 ["But the time within which one may file an amended complaint, when permitted by the court so to do, is not specified by any provision of law, and is a matter resting entirely within the discretion of the court."]; *Soda v. Marriott* (1933) 130 Cal.App.589, 594 [focusing on authority granted under Code Civ. Proc., § 473 in context of timeframe to file a bill of costs].) Likewise, Code of Civil Procedure section "581, subdivision (f)(2) '… gives the defendant the right to obtain a court order dismissing the action with prejudice once the court sustains a demurrer with leave to amend and the plaintiff has not amended within the time given.' " (*Cano v. Glover* (2006) 143 Cal.App.4th 326, 330.) "The statutory phrase 'may dismiss' unambiguously grants discretionary authority to trial courts." (*Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 807.) Finally, Code of Civil Procedure section "1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law. A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time. [Citation.] A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

" 'The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law.' [Citation.] 'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.' " (*Nuño v. California State University, Bakersfield*, *supra*, 47 Cal.App.5th at p. 808.)

Upon review of the three actions taken by the trial court, both individually and as a whole, we find no abuse of discretion in denying the motions and eventually dismissing the action. Looking first at the request for an extension of time, appellants filed their request on May 13, believing their time to serve the complaint was triggered by the filing of the April 4 order sustaining the demurrer. Appellants claimed they had not been properly served with that order, alleged they were waiting on copies of documents previously filed with the court to complete the amendment that may have been subject to significant delay in the prison mail system, and thought the amendments would be complete by June 13. As noted, the trial court rejected the request on the grounds that appellants had been aware of the amendment requirement since February and that copies of the relevant documents had been obtained in April. The court further noted that appellants had not been served with the order requiring amendment until May 14, and thus the date to amend was June 3.

Relevant to appellants' claims, this means that service of the order triggering the time frame for amending occurred after the extension request. This effectively granted appellants at least 15 days of additional time and placed the correct due date only 10 days before appellants' expected date of completion. Based on this timing alone, the court could readily conclude additional time was not necessary to complete the amendment. However, as the court noted, appellants had already obtained the documents they claimed were necessary to complete their amendment by late April. Even if appellants' claims of long wait times for mail were accepted, the court could logically conclude no extension of time was necessary to incorporate those documents into the forthcoming amendment. This conclusion is additionally supported by the fact, pointed out by respondents, that appellants were in possession of, and actually filed, the complete set of allegedly missing documents with the court in March, well before the extension request was filed. Based on these facts, this court finds no basis to conclude the trial court abused its discretion in denying the premature and factually unsupported request for an extension.

7.

The next disputed order occurred after appellants failed to meet the June 3 deadline to file their amended complaint. One full week after that deadline, on June 10, respondents moved ex parte to dismiss the action with prejudice. Appellants claim the court's order granting this motion was improper, although the grounds raised are not particularly clear from the briefing. In various statements made throughout the briefing, it appears appellants challenge whether they received proper notice of the motion and whether the court could dismiss the action with prejudice. We find neither of these arguments compelling.

The law is well settled that "an ex parte application to dismiss after failure of the party to amend does not require a noticed motion." (*Wilburn v. Oakland Hospital* (1989) 213 Cal.App.3d 1107, 1110.) Appellants suggest that the notice they received, a telephone call from counsel in advance of the motion and hearing, was insufficient to support a motion under Code of Civil Procedure sections 1005 and 1013. However, neither of these statutes cover the notice required on an ex parte application. Rather, the notice requirements for an ex parte application are governed by California Rules of Court, rules 3.1203 and 3.1204, which require notice at least a day before the scheduled hearing and a declaration stating how notice was provided. Appellants' arguments do not contest the fact they were given telephonic notice three days before the hearing and thus had actual knowledge of the hearing. Appellants therefore cannot demonstrate error in the notice provided.

Likewise, Code of Civil Procedure section "581, subdivision (f)(2) '… gives the defendant the right to obtain a court order dismissing the action with prejudice once the court sustains a demurrer with leave to amend and the plaintiff has not amended within the time given.' " (*Cano v. Glover*, *supra*, 143 Cal.App.4th at p. 330.) In fact, the law notes that dismissal without prejudice is anathema to the purpose of Code of Civil Procedure section 581, subdivision (f)(2). (*Cano*, at p. 330.) While appellants argue that dismissal with prejudice is not permitted, they fail to identify a valid rule upon which this

8.

claim rests or otherwise tackle the guidance articulated in *Cano*. Upon review, we see no reason to depart from *Cano* and agree that dismissal with prejudice is not only permissible but necessary under Code of Civil Procedure section 581, subdivision (f)(2).

The final contested order was issued December 2, following appellants' July 19 motion to reconsider the order denying their request for an extension of time.[4] In the order, the court rejected appellants' argument that an extension was proper because appellants had misunderstood how to calculate the relevant due date and had acted diligently upon realizing their error. Again, we find no abuse of discretion. The failure to properly track time is generally not an error that qualifies as excusable under Code of Civil Procedure section 473. (See *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1424–1425 [failure to calendar and appear based on workload not sufficient grounds].) Further, the evidence submitted here indicates that appellants merely failed to check the statutes regarding how to calculate time, and thus did not suffer a clerical or similar error that could be subject to relief upon diligent action. (See *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1133–1135 [noting history of granting relief for quickly resolved clerical errors in calendaring].) Likewise, the recognition of a legal error does not generally constitute new facts or law sufficient to warrant reconsideration

---

**4** Appellants also submitted a motion challenging the order dismissing their complaint. In the record, this document was stamped "**RECEIVED**" on August 16. Appellants note this document exists but do not make any specific arguments regarding it in their opening brief. The court sees no indication in the record that an opposition was filed or that the trial court resolved the specific issues raised in the document. Despite this, and with no citation to a ruling by the trial court, respondents dedicate several pages to arguing the trial court did not err in denying this motion. Appellants' lack of meaningful legal argument forfeits any potential claim of error on this motion to the extent such a claim can exist, and therefore, the court does not reach issues related to this motion. (See *Hernandez v. First Student, Inc*. (2019) 37 Cal.App.5th 270, 282 [failure to provide record cites, legal cites, or supporting legal argument constitutes forfeiture of identified issues].) The court likewise finds appellants have forfeited any claims not discussed in this opinion, including those identified as potential errors by the trial court in the lengthy recitation of facts provided by appellants but not supported by additional meaningful legal argument.

under Code of Civil Procedure section 1008. (See *Gilbert v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500 [identification of facts wholly collateral to underlying motion are not sufficient grounds for reconsideration].)  Appellants claim they miscounted the relevant time for their amendment does not raise any new legal or factual issues related to their initial request for more time, which could not be affected by that error in any event given the relevant order had not been served at the time the initial request was made.

Ultimately, on the grounds properly raised in this appeal, we see no abuse of discretion in denying appellants' request for additional time, granting the motion to dismiss when no timely amended complaint was filed, and denying appellants' request to reconsider the denial of their initial request for more time.  In each of these individual actions, the court properly followed the law and did not abuse its discretion in light of the facts presented.  Nor does an abuse of discretion appear when the results of these individual actions are considered as a whole.  Ultimately, the court recognized appellants had many months to draft an amended complaint, rejected their claim that the need for certain documents was delaying that task, and properly resolved the disputes that appear to have actually been raised before the court.  And while many potential reasons for reversal are hinted at in the briefing, few if any appear to have been raised before the trial court, and none are developed with sufficient analysis in the briefing to allow this court to entertain them without substantial speculation as to the relevant facts and legal theories.

### The Demurrer Was Properly Sustained

Although not as clearly developed as the procedural arguments discussed above, appellants also raise at least some broad issues with the trial court's initial order sustaining respondents' demurrer with leave to amend.  Having determined dismissal was procedurally proper, we will consider these issues in the context of a party that has chosen not to amend after a demurrer is sustained with leave to amend.

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)

10.

"When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.) "When a plaintiff elects not to amend after the court sustains a demurrer with leave to amend, we assume the complaint states as strong a case as possible, and we will affirm the judgment if the unamended complaint is objectionable on any ground raised by the demurrer." (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 981.)

Appellants concede in their briefing that the gravamen of all of their claims in this case is an assertion that respondents failed to discharge an official duty to protect information protected by the IPA. In sustaining respondents' demurrer, the trial court identified three grounds supporting the demurrer, one of which was appellants' failure to state facts sufficient to show a violation of the IPA. Upon review, we agree with the trial court's conclusion on this point and therefore need not reach the other grounds noted.

"The IPA's scope, while broad, does not encompass all documents or information handled or maintained by government agencies. Rather, by its terms, the IPA governs the maintenance and disclosure of agency-maintained 'records' containing 'personal information.' '*Records*' are defined as 'any file or grouping of information about an individual that is maintained by an agency by reference to an identifying particular such as the individual's name, photograph, finger or voice print, or a number or symbol assigned to the individual.' ([Civ. Code, ]§ 1798.3, subd. (g).) '*Personal information*' is defined as 'any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and

11.

medical or employment history.  It includes statements made by, or attributed to, the individual.' ([Civ. Code, ]§ 1798.3, subd. (a).)" (*Moghadam v. Regents of University of California* (2008) 169 Cal.App.4th 466, 477–478, fn. omitted (*Moghadam*).)  Similar to *Moghadam*, the letters and correspondence supporting appellants' claims are subject to the IPA only if they are "records" containing "personal information" within the meaning of the statute.

In *Moghadam*, the court undertook to define both records and personal information in the context of student exams and the information they contain.  In concluding that such documents were neither records nor personal information, the court drew on analogous federal law to define both terms.  In the context of defining records, the court concluded, "[T]he IPA applies only to institutional records that are preserved in the ordinary course of business by a single, central custodian." (*Moghadam*, *supra*, 169 Cal.App.4th at p. 751.)[5]  Considering the meaning of personal information, the court noted there must be "a relationship between the individual seeking the statute's protection and the information protected by the statute" such that the relationship gave meaning to the protection of information "that 'identifies' or 'describes an individual.' " (*Moghadam*, at p. 753.)  In the context of exam answers, such a relationship could not exist because the information was discussing or analyzing relevant questions, not the author of the exam.  Thus, while some information about the plaintiff could be gleaned from the answers, they did not identify or describe the individual.  (*Id.* at p. 754.)  Moreover, the mere existence of some identifying information, such as a name or student identification number, could not transform the general information into personal information.  (*Ibid.*)

---

[5]     Notably, in *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, the court rejected the narrow geographical basis for defining records elicited in *Moghadam*, noting it did not comport with the broader statutory language or modern notions of records. (*Id*. at pp. 645–646.)  We need not resolve this dispute here.

Finally, not all disclosures of personal information are prohibited. Rather, the statutory scheme specifically excludes the disclosure of information to "the individual to whom the information pertains" and "those officers, employees, attorneys, agents, or volunteers of the agency that have custody of the information if the disclosure is relevant and necessary in the ordinary course of the performance of their official duties and is related to the purpose for which the information was acquired," among others. (Civ. Code, § 1798.24, subds. (a), (d).)

In this case, appellants point to letters sent to them and one sent between agencies regarding requests that they change housing locations within the prison as the relevant records subject to IPA protection. The court has reviewed the complaint and can identify no allegations that would support a claim these letters are maintained as institutional records preserved in the normal course of business, as opposed to informational responses sent to appellants to resolve their requests. Further, upon review of the letters sent to appellants, the court agrees that these letters cannot be deemed to contain personal information as understood by the IPA. Although there is some information that can be gleaned from these letters, such as the fact that appellants are prisoners housed in protective custody that have sought a transfer, the letters themselves do not discuss any of the specifics underlying this potential personal information and are clearly designed to inform appellants only of the fact their request was denied and how any additional complaints were handled.

Even if we were to assume these letters were records containing personal information, the letters appear to fall within the statutory exception for information disclosed to the person to whom the information pertains. Although appellants allege these letters were exposed to review by others because they were sent through regular mail, the complaint itself makes no factual allegation that a disclosure of personal

13.

information did, in fact, occur.[6]  As such, the primary actions identified as an improper disclosure, letters to appellants sent through the mail, fail to show a violation of the IPA.

The final letter cited by appellants in support of their claims is a letter sent from an agency that is not a party in this matter to one of the respondents, which notes that one appellant had sought help in obtaining a housing transfer.  As this letter does not demonstrate a disclosure of personal information by respondents, it is insufficient to support the claims made in this case.

Ultimately, upon review of the record evidence, the court sees no error in the trial court's conclusion that the complaint, as drafted and supported, failed to demonstrate a violation of the IPA.  The court's order sustaining respondents' demurrer with leave to amend is therefore proper.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

---

[6]    The closest statement to such a contention is that one appellant was approached by officials who sought to discuss the specifics of his request for a transfer.  The allegations cannot support a claim of unauthorized disclosure because the individuals identified are all recognized as individuals authorized by the agency to act on appellants' requests and the person with whom they are speaking is the same appellant to whom the information pertains.